# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **NATIONAL CASUALTY COMPANY,** | )<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) No. 11 C 00567 |
| **JEWEL'S BUS COMPANY; CITY OF CHICAGO BOARD OF EDUCATION; THE BURLINGTON INSURANCE COMPANY; WILLIE BLEDSOE; JANE DOE, as special representative and next of friend of J. Doe,** | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |
| **THE BURLINGTON INSURANCE COMPANY,** | )<br>) |
| Defendant/Counter-Plaintiff, | )<br>) |
| v. | )<br>) |
| **WILLIE BLEDSOE; CITY OF CHICAGO BOARD OF EDUCATION; JANE DOE, as special representative and next of friend of J. Doe; JEWEL'S BUS COMPANY; NATIONAL CASUALTY COMPANY,** | )<br>)<br>)<br>)<br>) |
| Counter-Defendants. | )<br>) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff/counter-defendant National Casualty Company ("NCC") filed a one-count complaint seeking a declaration that under its business auto policy it has no duty to defend or indemnify the defendants in connection with an action brought by Jane Doe, as special representative and next friend of J. Doe, a minor, in the Circuit Court of Cook County. Defendant/counter-

plaintiff The Burlington Insurance Company ("TBIC"), which had issued a commercial general liability insurance policy to Jewel's Bus Company, filed a counterclaim seeking, in part, a declaration that NCC is obligated by its auto insurance policy to defend and indemnify the defendants in the underlying action.[1] NCC and TBIC have filed cross motions for summary judgment. NCC seeks judgment in its favor on its amended complaint, while TBIC seeks summary judgment in its favor on Count I of its counterclaim. For the reasons stated below, NCC's motion for summary judgment is granted in part and TBIC's motion for summary judgment is granted in part.[2]

The underlying litigation stems from the alleged sexual assault of J. Doe on a school bus by Willie Bledsoe ("Bledsoe").[3] Bledsoe was employed by Jewel's Bus Company ("Jewel's") as a bus driver. At the relevant times, the City of Chicago Board of Education ("Board") and Chicago Public Schools ("CPS") contracted

---

[1] TBIC filed a five-count counterclaim against NCC, Jane Doe, Jewel's, the Board, and Bledsoe. Count I is the only count at issue in the motions now before me.

[2] NCC has also filed a motion to strike paragraph 6 and exhibit B from TBIC's Rule 56.1 statement of undisputed facts based on TBIC's alleged failure to disclose Willie Bledsoe's Answer to Interrogatories in the underlying case. This motion is denied as moot.

[3] All facts relating to the underlying litigation are taken from the complaint filed by Jane Doe in the Circuit Court of Cook County and submitted by NCC as Exhibit D to NCC's amended complaint for declaratory judgment.

with Jewel's to provide transportation for children to and from school. J. Doe required "paraprofessional support" relating to transportation, meaning that an aide was required to be present on the school bus with him. However, for a period of about five days in September 2009, J. Doe was transported to school on the bus without an aide or attendant present. During this period, on September 15, 2009, Bledsoe picked up J. Doe from his home, purportedly to transport the child to school. On that day, Bledsoe instead restrained J. Doe for the entire school day and sexually assaulted J. Doe while on the school bus. Bledsoe threatened J. Doe and warned him not to tell anyone about the sexual assault or the fact that he had not been to school that day.

The complaint filed by Jane Doe consists of nine counts, all stemming from Bledsoe's alleged sexual assault of J. Doe. Counts I, II and VIII were brought against Bledsoe directly for assault, battery, and intentional infliction of emotional distress. Counts III through V were brought against the Board and CPS for negligent supervision, negligent hiring, and negligent retention. Counts VI and VII were brought against Jewel's for negligent supervision and negligent hiring. Finally, count IX was brought against the Board, CPS, and Jewel's for willful and wanton breach of their duties.

Jewel's and the Board filed claims for defense and indemnification for the underlying lawsuit with NCC and TBIC under their respective insurance policies. TBIC accepted the claims and is defending Jewel's, the Board, and Bledsoe subject to a reservation of rights. NCC, however, denied the claims. Thereafter, NCC filed its complaint for declaratory relief.

NCC issued a business auto policy to Jewel's, and the Board was named as an additional insured on the policy. The terms of the insurance agreement between NCC and Jewel's/Board provided:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

The policy also contains an exclusion for sexual abuse. The "Sexual and/or Physical Abuse Exclusion," contains three paragraphs and states:

> This policy does not apply to "bodily injury," "property damage" or "personal injury" sustained by any person arising out of or resulting from "sexual and/or physical abuse" by any person who actively participates in any act of "sexual and/or physical abuse."
>
> We shall have no duty to defend any "suit" against you seeking payment in connection with any claim made against you for "sexual and/or physical abuse."
>
> The following Definition is added to the policy:
>
> "Sexual and/or physical abuse" means any sexual or physical injury or abuse action or behavior, including but not limited to assault and battery, negligent or deliberate touching, corporal punishment and mental abuse.

All other terms and conditions remain unchanged.

NCC argues that based on the facts in the underlying complaint, the sexual abuse exclusion applies, thereby relieving NCC from its duty to defend and indemnify the state court defendants. Relying principally on the phrase "by any person who actively participates" in the first paragraph, TBIC responds by arguing that even if the exclusion were to apply to Bledsoe, it could not be applied to Jewel's or the Board. TBIC contends that NCC's reading of the exclusion is unduly focused on the second paragraph of the exclusion, ignoring the limiting "active participant" language in the first paragraph.

In determining whether an insurer has an obligation to defend, a court must read the insurance policy as a whole. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992). In addition, "a reviewing court will not interpret an insurance policy in such a way that any of its terms are rendered meaningless or superfluous." *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1023 (Ill. 2010) (citing *Cincinnati Ins. Co. v. Gateway Constr. Co.*, 865 N.E.2d 395, 399 (Ill. App. Ct. 2007)). "If the words in the policy are unambiguous, a court must afford them their *plain, ordinary, and popular meaning*. . . . However, if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous . . . and will be construed in favor of the insured and against the

insurer who drafted the policy." *Outboard Marine*, 607 N.E.2d at 1212 (emphasis in original) (citations omitted). Finally, "provisions that limit or exclude coverage will be interpreted liberally in favor of the insured and against the insurer." *Pekin*, 930 N.E.2d at 1017 (quoting *Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72, 75 (Ill. 1997)).

Applying these basic tenets of insurance policy construction, I conclude that the sexual abuse exclusion at issue here operates to limit NCC's duty to defend to the claims against Jewel's and the Board and to exclude coverage for the claims against Bledsoe. I reach this conclusion because the exclusion contains ambiguous language and, further, to read the ambiguity in NCC's favor would render the language superfluous. Specifically, the first paragraph of the exclusion describes the type of injury excluded from the policy while the second paragraph delineates the types of claims that the insurer will not defend. NCC concedes that the limiting language in the first paragraph operates only to exclude claims against Bledsoe, who is the only person alleged to have actively participated in the assault of J. Doe. (*See* NCC's Supplemental Br., at p. 6) (Dkt. No. 68). But NCC insists that the broad language in the second paragraph is unaffected by the limiting language in the first paragraph.

Herein lies the ambiguity. The second paragraph does not clearly limit the exclusion to claims made only against "active participants" for sexual abuse, but to read it otherwise would render the "active participant" language in the first paragraph meaningless. Because I may not interpret the policy in a way that renders the "active participant" term superfluous and because I must construe any ambiguity against NCC, I conclude that the sexual abuse exclusion applies only to claims against Bledsoe, who is alleged to have actively participated in the assault against J. Doe.[4] The exclusion does not, however, operate to excuse NCC from defending claims against Jewel's and the Board, undisputed non-active participants in the assault, from coverage.

The cases cited by NCC in support of its reading of the "in connection with" language in the second paragraph do not impact my analysis. In *United Nat'l Ins. Co. v. Entm't Grp., Inc.*, 945 F.2d 210 (7th Cir. 1991), the court concluded that the insurer did not have a duty to defend a theater owner in a case in which

---

[4] TBIC's argument that there is a potential for coverage for claims asserted against Bledsoe is unavailing. TBIC contends that Bledsoe's Answers to Interrogatories in the underlying lawsuit, denying that he sexually assaulted J. Doe, create a possibility that he was not an "active participant." But Bledsoe's denials do not implicate the active participant clause. Bledsoe's denials do not suggest that he was merely a "passive participant" and they instead go to the heart of the allegations in the underlying complaint, which allege that Bledsoe was an active participant in the sexual assault.

7

the plaintiff alleged that the theater owner's negligence caused the sexual assault of her daughter, a minor. The Seventh Circuit found that the unambiguous language found in an exclusion endorsement relieved the insurer of any duty to defend. *Id.* at 213. The assault and battery exclusion clearly stated that there would be no coverage for claims "arising out of an assault and/or battery, whether caused by . . . omission by, the Insured, and/or his employees." *Id.* at 212. By contrast, the sexual abuse exclusion here contains language that limits the exclusion only to active participants. Even if, as NCC argues, the "arising out of" language is to be interpreted in the same manner as "in connection with," the "active participant" language imposes a limitation that distinguishes the policy at issue here from the one in *United Nat'l Ins.*

NCC also cites to *Hermitage Ins. Co. v. Dahms*, 842 F.Supp. 319 (N.D. Ill. 1994), to support its analysis of the terms "in connection with." But, again, the exclusion at issue in that case contains no limiting language comparable to the "active participant" term here. There, the assault and battery exclusion stated: "bodily injury or death alleged to have been caused by ASSULT [sic] AND/OR BATTERY shall not be deemed an accident or occurrence under the Policy and no coverage shall apply hereunder." *Id.* at 322. The court focused its analysis on the terms "caused by," and the case is therefore of little aid in

8

determining the impact of the limiting language in the sexual abuse exclusion at issue here.

Finally, based on the inclusion of a narrowly-crafted sexual abuse exclusion in the policy, I ascertain the parties to have intended to otherwise include claims for sexual abuse in the policy. NCC cites to *Thornton v. Ill. Founders Ins. Co.*, 418 N.E.2d 744 (Ill. 1981), in response to TBIC's argument that an exclusion for sexual abuse that is limited to active participants implies that the parties intended the policy to cover some sexual assault claims. In *Thornton*, the Illinois Supreme Court analyzed a policy that defined a covered "occurrence" as "an accident . . . which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id.* at 746. The policy also excluded injuries "arising out of assault and battery." *Id.* The appellate court had found that the exclusion was redundant "since a battery necessarily involves an intentional act," and intentional acts were not covered by the policy generally. *Id.* at 747. The Supreme Court disagreed, concluding that "[m]erely because these provisions tend to overlap does not render them conflicting." *Id.* In so holding, the Supreme Court had found that both clauses were "clear and precise on their face." *Id.* Additionally, the exclusion was broad, and included claims arising out of "any act or omission in connection with the prevention or suppression of such assault or

9

battery." *Id.* at 746. By contrast, here I have already held that the exclusion is ambiguous and must be narrowly construed to exclude only claims involving "active participants" in the sexual abuse. The other terms of the policy do not clearly rule out coverage for sexual assault or abuse. To construe the policy as otherwise excluding any claim related to sexual abuse would conflict with the narrow exclusion, rendering the entire sexual abuse exclusion superfluous. Because I must not interpret the policy in a way that renders any of its terms meaningless or superfluous, I find that the parties intended the policy to cover at least some claims arising from sexual abuse.

For the foregoing reasons, I grant NCC's motion for summary judgment as to Bledsoe and grant TBIC's motion for summary judgment on Count I of its counterclaim as to Jewel's and the Board. While NCC does not have a duty to defend Bledsoe in the underlying lawsuit, it does have a duty to defend Jewel's and the Board.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: July 24, 2012